# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARLEY SEEGERT, *an individual, on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>LAMPS PLUS, INC.,<br><br>Defendant. | Case No. 17-cv-1602-BAS-LL<br><br>**ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[ECF No. 21]** |

Plaintiff Harley Seegert commenced this class action against Defendant Lamps Plus, Inc. seeking relief for violations of California's Unfair Competition Law, California's False Advertising Law, and California's Consumer Legal Remedies Act. Plaintiff alleges Defendant engages in fraudulent pricing practices by labeling its merchandise with "Compare At" price tags without ever offering the product at the listed original price. (Compl. ¶¶ 3-8, ECF No. 1-3.) Plaintiff claims this deceptive

pricing scheme leads Lamps Plus customers to believe they are receiving a discount, when in fact, they are paying the original retail price. (*Id.* ¶ 5.)

Defendant removed the action to this Court under the Class Action Fairness Act ("CAFA"). Now, without opposition, Plaintiff moves for class certification and preliminary approval of a proposed settlement. (Mot., ECF No. 21-1.) The Court finds this motion suitable for determination based on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's motion for preliminary approval of class action settlement.

## I.    PROPOSED SETTLEMENT

### A.    Settlement Class

After conducting an investigation of the facts, analyzing the relevant legal issues, and participating in a full-day mediation session before the Hon. Carl J. West (Ret.) of JAMS, Inc., the parties reached a proposed settlement of this matter ("Settlement"). (Settlement Agreement and Release ("Settlement Agreement") Recitals D, E, ECF No. 21-2.)[1] The Settlement applies to a proposed Class that is defined as:

> All Lamps Plus customers who purchased Lamps Plus branded or trademarked merchandise bearing a "Compare At" price tag in the State of California from July 5, 2013 to the date of preliminary approval. Excluded from the Class are Lamps Plus's Counsel, Lamps Plus's officers, directors and employees, and the judge presiding over the Action.

(*Id.* § 1.9.) Defendant estimates the Class consists of at least 930,835 individuals. (*Id.* § 2.2.) Class Members who do not timely and sufficiently request to be excluded from the Settlement will remain members of the Class. (*Id.* § 1.12.) The parties seek to appoint Plaintiff as Class Representative and Plaintiff's counsel, Todd Carpenter of

---

[1] Capitalized terms used in this Order but not defined herein have the meanings ascribed to them in the Settlement Agreement.

– 2 –    17cv1602

Carlson Lynch Sweet Kilpela & Carpenter, LLP, as Class Counsel. (*Id.* §§ 1.27, 3.1(g).)

### B. Settlement Award

Defendant denies all allegations of wrongdoing asserted by Plaintiff; however, Defendant wishes to settle this dispute in order to further avoid the expense and inconvenience of litigation. (Settlement Agreement Recital G.) Defendant agrees to provide each Class Member with a Voucher, which is defined as:

> a voucher good for a purchase in a Lamps Plus retail store in the United States for either (i) $18 off a purchase (no minimum purchase), or (ii) 20% off a purchase (of up to $150 in value) or $30 in credit against the purchase of any item valued at over $150.

(*Id.* § 1.34.)[2] The Settlement Agreement also notes:

> The Vouchers will have no expiration date. The Vouchers are good for a single use. The Vouchers are not stackable and may not be combined with any other coupon or promotional offer. However, the Vouchers may be used on items that are on sale or otherwise discounted. The Vouchers shall not be redeemable for cash, and will not be replaced if lost, stolen, or damaged. The Vouchers are transferrable.

(*Id.*)

Class Members will have the option to elect which form of the Voucher they prefer to receive. (Settlement Agreement § 2.1.) Any Class Member who does not receive a direct notice of the Class Action via email or mail must complete and submit a claim form to receive a Voucher. (*Id.* §§ 1.2, 1.3.)

### C. Attorneys' Fees and Settlement Costs

The parties have agreed Class Counsel will not seek an award greater than $750,000 for attorneys' fees and costs, and the Class Representative will not seek an incentive award greater than $5,000. (Settlement Agreement §§ 2.4, 2.5.)

---

[2] Plaintiff's Motion for Preliminary Approval states the Vouchers may be used at "any Lamps Plus retail store or online." (Mot. 14:11 (citing Settlement Agreement §§ 2.1-2.2).) However, the Settlement Agreement only provides that the Vouchers may be used "in a Lamps Plus retail store." (Settlement Agreement § 2.1(a).) Thus, it is unclear whether the Vouchers may also be used online. (*See id.*)

## II. DISCUSSION

"Congress passed CAFA 'primarily to curb perceived abuses of the class action device.'" *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (quoting *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir. 2009)). "One such perceived abuse is the coupon settlement, where defendants pay aggrieved class members in coupons or vouchers but pay class counsel in cash." *Id.*; *see also* CAFA, Pub. L. No. 109-2, § 2, 119 Stat. 4, 4 (2005). Coupon settlements are highly scrutinized because there is a concern that class members are being "shortchanged." *Redman v. Radioshack Corp.*, 768 F.3d 622, 636-37 (7th Cir. 2014) (Posner, J.). Further, if a settlement awards coupons, CAFA "requires that 'any attorney's fee' awarded for obtaining coupon relief be calculated using the redemption value of the coupons." *In re HP Inkjet*, 716 F.3d at 1184 (quoting 28 U.S.C. § 1712(a)). Thus, delineating settlements that award cash or cash-equivalent certificates from those awarding coupons significantly affects the calculation of attorneys' fees. *See id.* at 1182-86. Parties often attempt to avoid CAFA's requirements by referring to class action settlement awards as "e-credits" or "vouchers," when in fact the characteristics of these awards fit those of coupons. *See id.* at 1176 (describing the awarded "e-credits" as "a euphemism for coupons"); *see also In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 704 (7th Cir. 2015) ("Despite the protests of class counsel, the replacement vouchers for free drinks on Southwest flights are indeed 'coupons.'").

Accordingly, the Court will first consider whether the Vouchers to be awarded in this case are "coupons" under CAFA. *See* 28 U.S.C. § 1712. The Court will then determine whether granting preliminary approval of the Settlement is appropriate.

### A. The Proposed Vouchers Are Coupons

"Because Congress does not define the ambiguous term 'coupon' within [CAFA], 'we may "look to other interpretive tools, including the legislative history" in order to determine the statute's best meaning.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950 (9th Cir. 2015) (citing *In re HP Inkjet*, 716 F.3d at 1181).

1  The Senate Judiciary Committee's Report for CAFA provides examples of coupon
2  settlements, including: "$25 to $55 off a future cruise," "a $5 to $10 voucher good
3  for future purchases of particular computer hardware or software products," and $55
4  toward the purchase of a new crib from a company accused of selling unsafe cribs.
5  S. Rep. No. 109-14, at 15-20 (2005). "These discounts require class members to hand
6  over more of their own money before they can take advantage of the coupon, and
7  they often are only valid for select products or services." *In re Online DVD*, 779 F.3d
8  at 951.
9     In evaluating whether certain credits qualify as coupons, three factors are
10  considered: "(1) whether class members have to 'hand over more of their own money
11  before they can take advantage of' a credit, (2) whether the credit is valid only 'for
12  select products or services,' and (3) how much flexibility the credit provides,
13  including whether it expires or is freely transferrable." *In re Easysaver Rewards*
14  *Litig.*, 906 F.3d 747, 755 (9th Cir. 2018) (citing *In re Online DVD*, 779 F.3d at 951).
15  Moreover, credits can be considered coupons when they only have value "if a class
16  member is willing to do business again with the defendant who has injured her in
17  some way, when the [credits] have modest value compared to the new purchase for
18  which they must be used, and when the [credits] expire soon, are not transferable,
19  and/or cannot be aggregated." *In re Sw. Airlines*, 799 F.3d at 706; *see also In re*
20  *Easysaver*, 906 F.3d at 755.
21     In the present case, the parties propose providing Class Members with an $18
22  Voucher expendable in a Lamps Plus retail store. (Settlement Agreement § 1.34.)
23  Class Members can also opt to use the Voucher for either (i) 20% off a purchase of
24  up to $150, or (ii) $30 in credit against the purchase of any item valued over $150.
25  (*Id.*) With at least 930,835 estimated Class Members, Plaintiff attempts to value the
26  Settlement at $16,755,030 by multiplying the number of Class Members by the price
27  of the vouchers being distributed. (Mot. 8:3-8.) However, providing Class Members
28  $18 in store credit is not as valuable as providing them $18 in cash. *See, e.g.*, *Redman*,

768 F.3d at 636-37 (discussing "the ways in which store credit for $10 is not as valuable to the recipient as $10 in cash"). And while the Settlement Agreement refers to the class reward as a "voucher" and not a "coupon," the Senate Report on CAFA's coupon provisions treats the term coupon as interchangeable with voucher. *See* S. Rep. No. 109-14; *see also Redman v. RadioShack Corp.*, 768 F.3d at 636.

Further, Defendant's product offerings, Plaintiff's alleged shopping experience, and comparisons with other cases demonstrate that the Vouchers offered in the Settlement are coupons. Plaintiff utilizes Defendant's digital storefront when arguing the Vouchers are not coupons. (Mot. 8:8-12.) On its website, Lamps Plus proclaims itself to be "the nation's largest lighting retailer." Lamps Plus, https://www.lampsplus.com/ (last visited Nov. 14, 2018). It advertises approximately 62,000 products including lamps, ceiling lights, furniture, and rugs, among other home décor. *Id.* Of the 62,000 products, only about 5,800 of them are under $18. *Id.* The narrow confines of items under $18 include: light bulbs, track lights, and deck lights. *See id.* (*See also* Mot. 8:8-12.) Most of the products actively promoted at Lamps Plus are more expensive than $18. *See* Lamps Plus, https://www.lampsplus.com/. This fact suggests the Vouchers are coupons under CAFA. *See In re Easysaver*, 906 F.3d at 755; *see also Redman*, 768 F.3d at 636 (concluding vouchers were coupons where it appeared the majority of the defendant's products, including those that were "actively promoted and presumably most in demand by consumers," were more expensive than the voucher amount).

Plaintiff's personal experience also supports the conclusion that the Vouchers are coupons. Plaintiff alleges to have gone to Lamps Plus to purchase a chest. (Compl. ¶ 13.) He encountered a 55 Downing Street branded Josephine 3-Drawer Mirrored Accent Chest with Silver Trim discounted from $899.99 to $599.99 and ultimately purchased it. (*Id.*) Plaintiff's purchase of the $599.99 chest indicates he was enticed to shop at Lamps Plus for its furniture and home décor—products that are priced well above $18. *See* Lamps Plus, https://www.lampsplus.com/. And, in light of Plaintiff's

1 experience and the products actively promoted by Lamps Plus, it is likely that other
2 customers were similarly interested in products more expensive than $18. This
3 likelihood, too, supports that the proposed Vouchers qualify as coupons. *See In re*
4 *Easysaver*, 906 F.3d at 755; *see also Redman*, 768 F.3d at 636-37.

5 Finally, the proposed relief here can be distinguished from cash-equivalent
6 certificates awarded in other cases. For example, in *In re Online DVD*, 779 F.3d at
7 950, the Ninth Circuit concluded a $12 gift-card to Walmart.com was not considered
8 a coupon because it offered class members a choice from thousands of products for
9 which ordinary consumers have need. The products available at Lamps Plus are not
10 everyday products required for purchase. Lamps, couches, tables, and other home
11 décor are generally not essential items. Further, the class members in *In re Online*
12 *DVD* also "had the option of obtaining cash instead of a gift card, undercutting the
13 argument that the settlement forces them to buy from the defendant." 779 F.3d at 950.
14 There is no similar option here. Therefore, the Vouchers are not equivalent to cash.
15 Rather, the Vouchers are coupons that will likely force the Class Members to spend
16 more of their own money in order to realize the benefit of the settlement. *See, e.g.*,
17 *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1075 (C.D. Cal. 2010)
18 (reasoning that coupons aim to facilitate a sale to a purchaser who would not have
19 otherwise purchased the product); *see also Redman*, 768 F.3d at 636.

20 In sum, the Court concludes the Settlement's Vouchers are coupons, and the
21 Settlement will be scrutinized under CAFA's requirements. *See In re Easysaver*, 906
22 F.3d at 758.

23 **B.** **The Settlement Is Not Compatible with CAFA**

24 Having concluded the Vouchers are coupons, the Court turns to whether the
25 Settlement survives scrutiny under Rule 23(e)(2) and comports with CAFA. Prior to
26 approving a settlement, the Court must make a preliminary determination of whether
27 the class action settlement is "fair, reasonable, and adequate" pursuant to Rule
28 23(e)(2). "It is the settlement taken as a whole, rather than the individual component

parts, that must be examined for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). A court may not "delete, modify or substitute certain provisions" of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

CAFA further "regulate[s] coupon settlements" in "two forms." *In re HP Inkjet*, 716 F.3d at 1178. "The first invites increased judicial scrutiny of coupon settlements generally." *Id.* "In a proposed settlement under which class members would be awarded coupons, the court may approve the proposed settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members." 28 U.S.C. § 1712(e).

Second, as mentioned above, CAFA "imposes restrictions on attorney's fee awards for class action settlements that provide class members relief in the form of coupons." *In re Easysaver*, 906 F.3d at 754-55. One of these restrictions, § 1712(a), reads:

> If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712(a). The Ninth Circuit interpreted this provision in *In re HP Inkjet*. 716 F.3d at 1177-86. The Court of Appeals determined that "an attorneys' fees award is 'attributable to' an award of coupons where the attorneys' fees award is a 'consequence' of the award of coupons." *Id.* at 1181. Therefore, "if the district court awards 'any' attorney's fees, and those attorney's fees are 'attributable to the award of coupons,' then the fees award must be calculated in the manner prescribed by § 1712(a) (i.e. using the redemption value of the coupons)." *Id.* And "when a settlement award "contains only coupons," the fees award cannot be 'attributable to' anything but the coupons." *Id.* at 1182. Consequently, where a settlement provides only coupons to class members, the attorneys' fees award must be based on the redemption value of the coupons. *Id.*

To comply with § 1712(a), the coupons must first be distributed and then valued based on the number of coupons redeemed. *See* 28 U.S.C. § 1712(a); *see also In re HP Inkjet*, 716 F.3d at 1186. A proposed settlement that precludes the calculation of the redemption value of the coupons is not compatible with CAFA. *See* 28 U.S.C. § 1712(a); *see also In re HP Inkjet*, 716 F.3d at 1186-87. In *In re HP Inkjet*, the parties drafted their settlement agreement in a manner that specified the coupons would not be distributed "until after entry of a final judgment." *Id.* at 1186. Because the coupons could not be allocated to class members until a final judgment was entered, "it would have been impossible for the district court to calculate the redemption value of the coupons as required by § 1712(a)." *Id*. The Ninth Circuit noted:

> By structuring the settlement in this way, the parties essentially invited the error here. Of course, had the settlement been structured so that the redemption value of the coupons was ascertainable before final settlement approval, plaintiffs' attorneys would have been entitled to seek compensation for . . . the coupon . . . relief obtained for the class.

*Id.*

As determined above, the parties' Settlement awards coupons to the Class Members and is subject to CAFA's requirements. Similar to *In re HP Inkjet*, however, the parties' Settlement Agreement provides that the Vouchers will be distributed only after the Final Settlement Date, which is "two Court days after the Final Order and Judgment" becomes final. (Settlement Agreement §§ 1.2, 2.2.) At that point, the parties contemplate that the action will have been "dimiss[ed] . . . with prejudice," and the Court will have already "issu[ed] orders related to the relief provided for in the Settlement Agreement, including . . . payment of Plaintiff's Individual Settlement Award, and payment of Class Counsel's fees and costs." (*See id.* § 3.10.) This structure will not allow the Court to ascertain the redemption value of the coupons "before final settlement approval," and the Court is concerned that

this structure "invite[s] [an] error" similar to that made by the district court in *In re HP Inkjet*. *See* 716 F.3d at 1186.

In light of the foregoing, the Court is not convinced that the Settlement comports with CAFA's requirements, and the Court denies without prejudice Plaintiff's motion for preliminary approval of the Settlement. Should the parties still desire to provide Class Members with coupon relief, they should address the concerns raised in this Order and file a new motion for preliminary approval.[3]

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES WITHOUT PREJUDICE** Plaintiff's motion for preliminary approval of class action settlement (ECF No. 21).

**IT IS SO ORDERED.**

**DATED: November 19, 2018**

Hon. Cynthia Bashant
United States District Judge

---

[3] *See In re HP Inkjet*, 716 F.3d at 1186 n.19 (indicating how the parties and the district court may address the redemption value requirement); *see also In re Easysaver*, 906 F.3d at 760 ("Because the settlement dictates that the $20 credits will not be distributed until after the final settlement approval, it is impossible to calculate their redemption rate while the settlement is still pending. But, as we explained in *In re HP*, there are ways for the parties to address this challenge. As one example, 'a fees award can be bifurcated or staggered to take into account the speculative nature of at least a portion of a class recovery.' Alternatively, the parties could amend the settlement so that the redemption rate will be ascertainable before the entry of final judgment." (citations omitted)).